**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

NORMA CARRERO,

      Plaintiff**,**                                CASE NO.: 1:21-cv-21789-JEM

                                                    **PLAINTIFF DEMANDS**
v.                                                       **A TRIAL BY JURY**

5725 NW 186TH STREET OPERATIONS, LLC
d/b/a NSPIRE HEALTHCARE MIAMI LAKES,

      Defendants.
_____/

**AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, NORMA CARRERO ("Plaintiff" or "Ms. CARRERO") in the above styled cause hereby sues Defendant 5725 NW 186TH STREET OPERATIONS, LLC d/b/a NSPIRE HEALTHCARE MIAMI LAKES, ("Defendant" or "NSPIRE") and hereby files and serves her Amended Complaint and Demand For Jury Trial and alleges:

**NATURE OF CASE**

1. This employment discrimination case is about an employer who subjected its employee to relentless discrimination, harassment, and retaliation, ultimately culminating in the unlawful termination of the employee.

2. This is an action for damages and other relief pursuant to the Age Discrimination in Employment Act, 29 U.S.C. §621 et seq. ("ADEA") and seeks damages to redress the injuries Plaintiff has suffered as a result of being discriminated against because of her age, and for being retaliated against by her employer solely for performing a background check on her supervisor as required of her position, all ultimately culminating in her wrongful termination.

3. Ms. CARRERO seeks monetary relief to redress Defendant's unlawful employment practices in violation of the ADEA. Additionally, this action seeks to redress Defendant's deprivation of Ms. CARRERO's personal dignity and her civil right to pursue equal employment opportunities.

4. Throughout the course of her employment, Plaintiff CARRERO found herself at the center of a hostile work environment as part of a scheme orchestrated by Defendant to unlawfully eliminate Ms. CARRERO from her position.

5. Defendant's unrelenting discrimination against Plaintiff culminated in her unlawful termination.

6. At bottom, Defendant is liable for subjecting Ms. CARRERO to a work environment infested with relentless discrimination and harassment and for wrongfully terminating Plaintiff because of her age.

## JURISDICTION AND VENUE

7. This is an action for monetary damages and all other appropriate relief as deemed by the court, pursuant to the Age Discrimination in Employment Act 29 U.S.C. §621 et seq. ("ADEA").

8. This Court has jurisdiction of the claims herein pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding deprivation of Plaintiff's civil rights under ADEA.

9. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) based upon the fact Defendants were located in this judicial district, and a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged

herein, occurred in this district. Plaintiff was employed by Defendant within Miami-Dade County, Florida. Additionally, the events took place in Miami-Dade County, Florida.

## PROCEDURAL PREREQUISITES

10. Plaintiff has complied with all statutory prerequisites to file this action.

11. On or about May 22, 2020, Plaintiff dual-filed charges with the Equal Employment Opportunity Commission ("EEOC") and Florida Commission on Human Relations ("FCHR"), against Defendant as set forth herein, Charge No. 15D-2020-00939.

12. An EEOC filing automatically operates as a FCHR filing.

13. On or about February 11, 2021, the EEOC issued a right to sue letter, and this action is being commenced.

14. This action is being commenced more than one hundred eighty (180) days since the inception of Plaintiff's admirative action against the Defendants.

## PARTIES

15. At all material times, Plaintiff CARRERO is an individual woman over the age of 40 who is a resident of the State of Florida and resides in Miami-Dade County.

16. Defendant NSPIRE is a Florida Limited Liability Company duly authorized and existing by the virtues and laws of the State of Florida.

17. From January 6, 2020, to the end of Plaintiff's employment, Defendants NSPIRE employed ALEXIS MORFA (hereinafter referred to as "MORFA") as Executive Director.

18. From September 18, 2018 until Plaintiff's wrongful termination, MORFA held supervisory authority over Plaintiff, controlling various tangible aspects of her employment, including but not limited to the power to hire and fire Ms. CARRERO.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

19. In or around February 2007, Plaintiff was hired by Heartland Miami Lakes as Human Resources Director.

20. On or about September 18, 2018, Defendant NSPIRE purchased Heartland Miami Lakes and the two companies merged.

21. On or about September 18, 2018, Plaintiff was retained to work with Defendant as Human Resources Coordinator, essentially the same position she held under Heartland Miami Lakes.

22. On or about January 6, 2020, Defendant hired MORFA to serve as Plaintiff's supervisor in the role of Executive Director.

23. On or about January 8, 2020, Plaintiff returned from a previously scheduled vacation.

24. On or about January 10, 2020, just four days after beginning his employment with Defendant, MORFA requested a meeting with Plaintiff.

25. In the meeting on or about January 10, 2020, MORFA told Plaintiff that she was his "weakest" manager, contrary to available metrics employed by Defendant.

26. When Plaintiff requested to learn more about her supposed performance deficiencies, MORFA declined to provide further information.

27. Shortly thereafter, MORFA expressly told Plaintiff, "**YOU WILL NEVER RETIRE FROM THIS COMPANY**." Prior to this comment, Plaintiff had never spoke of her retirement with MORFA or in the workplace.

4

28. After the meeting, MORFA intensified his discrimination against Plaintiff by making repeated and pointed comments regarding Plaintiff's age and retirement.

29. By means of example and not meant to be an exhaustive list, MORFA told Plaintiff, in front of several employees, "**I AM GOING TO GET RID OF THE BAD PEOPLE HERE**," while staring directly at Plaintiff.

30. By means of further example, MORFA further commented, "**OLDER PEOPLE NEED TO RETIRE**," while again staring directly at Plaintiff in front of her colleagues.

31. MORFA then began to permeate the workplace with age-related comments regarding Plaintiff CARRERO.

32. By further means of example, MORFA regularly told Plaintiff's coworkers in Plaintiff's presence, "[**Plaintiff**] **WON'T BE HERE LONG**," and "[**Plaintiff**] **IS OUT OF HERE**."

33. In or around MORFA's first week of employment with Defendant NSPIRE, Plaintiff, as Human Resources Coordinator, performed a background check on MORFA as required by her job duties and federal law.

34. Although MORFA's background check had been previously conducted by a different subsidiary of Defendant's, a new background check was necessary pursuant to Defendant's policies as a result of his transfer to Defendant NSPIRE.

35. Through the background check, Plaintiff learned MORFA had a previous arrest within one-year of his hiring date with Defendants. Upon this basis, Plaintiff formed a good faith belief that MORFA was not qualified to perform his position as Executive Director.

36. In or about late January, Plaintiff approached MORFA regarding her findings.

37. In turn, MORFA instructed Plaintiff to shred the background check.

38. Plaintiff, feeling uncomfortable with MORFA's request to shred his background check, appealed to Defendant's Vice President.

39. Defendant's Vice President told Plaintiff to contact Defendant's legal representatives with her findings, as an exemption was needed to permit MORFA to continue his employment with Defendant.

40. Furthermore, in or about early February 2020, Plaintiff, believing that MORFA's conduct and comments towards her were the result of age discrimination, complained to Defendant's Assistant Vice President Jackie B (last name unknown) and specifically stated that MORFA was discriminating against her based on her age.

41. In turn, Assistant Vice President Jackie B (last name unknown) informed Plaintiff that she would investigate her complaints of MORFA's age discrimination. As of the filing of this Complaint, it is unknown what, if any, action Assistant Vice President Jackie B (last name unknown) took to investigate Plaintiff CARRERO's complaints.

42. In or about early February 2020, before Plaintiff could contact Defendant's legal counsel as requested by Defendant's Vice President, and approximately one week and one day after performing the background check and raising her complaints of MORFA's age discrimination to upper management, MORFA summoned Plaintiff into his office where the Director of Nursing and the Assistant Director of Nursing were present.

43. In this meeting, MORFA told Plaintiff that she had performance issues.

44. Believing such a comment was the result of MORFA's age-related discrimination, Plaintiff protested MORFA's evaluation of her performance.

45. In response, MORFA asked Plaintiff if she would return her keys to the building. Plaintiff understood this as a notice of termination.

46. MORFA then told the Director of Nursing to "**GET [her] OUT OF THERE**" because MORFA did not "**WANT TO SEE HER**" anymore. Plaintiff was then asked to leave the meeting.

47. Shortly thereafter, MORFA texted Plaintiff that her handing the keys to MORFA upon his request constituted her termination from employment with Defendant.

48. The aforementioned facts are just some of the examples of the discrimination, harassment, and retaliation Ms. CARRERO suffered.

49. Additionally, Ms. CARRERO claims a continuous practice of discrimination and continuing violations and makes all claims herein under the continuing violations doctrine.

50. Defendant has established a pattern and practice of not only discrimination and harassment but also retaliation.

51. As a result of the acts and conduct complained herein, Plaintiff CARRERO has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits, and other compensation which such employment entails. Plaintiff has also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

52. Ms. CARRERO has further experienced severe emotional and physical distress. Ms. CARRERO suffers from increased stress and anxiety. Similarly, Ms. CARRERO has trouble sleeping as a result of Defendants' conduct. As a result of Defendant's actions, Plaintiff CARRERO felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

53. As Defendant's conduct has been malicious, willful, extreme and outrageous, and with full knowledge of the law, Plaintiff respectfully seeks all available damages including but not limited to emotional distress, loss wages, back pay, front pay, statutory damages, attorney's fees, costs, interest and punitive damages from all Defendants jointly and severally.

54. Defendant's actions and conduct were intentional and intended to harm Plaintiff CARRERO.

55. Plaintiff CARRERO has presented factual allegations that would permit any reasonable jury to award damages.

56. At bottom, Defendant is liable for their reckless disregard for Plaintiff CARRERO's personal dignity and his civil right to pursue equal employment opportunity.

57. Plaintiff CARRERO has suffered damages as a result of Defendants' unlawful employment practices.

## **COUNT I- DISCRIMINATION UNDER THE ADEA**

58. Plaintiff realleges and incorporates by reference each allegation contained in the previous paragraphs, and further alleges as follows.

59. Plaintiff is over the age of 40 and is protected against discrimination under the ADEA.

60. The ADEA (29 U.S.C. 626) provides that it shall be unlawful for an employer:

    (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to their compensation, terms, conditions, or privileges of employment, because of such individual's age;

    (2) to limit, segregate, or classify their employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age.

61. Defendant engaged in unlawful employment practices prohibited by 29 U.S.C. §626 *et seq*, by discriminating against Plaintiff because of her age.

62. Ms. CARRERO was subject to discriminatory conduct and comments during her employment with Defendant and this conduct was directed to and perpetuated upon Plaintiff because of her age.

63. The discriminatory and disparate treatment of Plaintiff included but was not limited to incessant derogatory comments, unreasonably accusing Plaintiff of performance issues, and wrongfully terminating Plaintiff.

64. Defendant NSPIRE's employee MORFA regularly made comments relating to Plaintiff's age, asserting that Plaintiff would never retire from Defendant and that older employees need to retire.

65. MORFA maintained a position of authority over Plaintiff with the ability to modify the terms and conditions of Plaintiff's employment, including terminating Plaintiff.

66. Defendant treated Plaintiff less favorably than similarly situated employees outside the protected class.

67. Defendant engaged in adverse employment actions against Plaintiff, including but not limited to, refusing to return promote Plaintiff and wrongfully terminating Plaintiff, on the basis of her age.

68. The Defendant's termination of Plaintiff was because of her age.

69. Defendant NSPIRE filled Plaintiff's position after Ms. CARRERO's wrongful termination with a substantially younger employee.

70. As a result of Defendant's violations of the ADEA, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, mental pain and suffering; humiliation; emotional distress; diminishment of career opportunities; harm to business reputation; loss of self-esteem; disruption to her family life; and other harm, pain and suffering, both tangible and intangible.

71. Conduct of Defendant and/or its agents deprived Plaintiff of her statutory rights guaranteed under federal law.

72. Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

73. Plaintiff CARRERO has been damaged by the illegal conduct of Defendant NSPIRE.

## COUNT II- RETALIATION UNDER THE ADEA

74. Plaintiff realleges and incorporates by reference each allegation contained in the previous paragraphs, and further alleges as follows.

75. Defendant NSPIRE discriminated against Plaintiff due to her age in making multiple employment related decisions.

76. The ADEA (29 U.S.C. 623(d)) states: "It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment, for an employment agency to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because such individual, member or applicant for membership has opposed any practice made unlawful by this section, or because such individual, member or applicant for membership has

made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter."

77. At all times relevant, Plaintiff acted in good faith and with the objective and subjective belief that violations of the ADEA by Defendant NSPIRE's employees had occurred.

78. Plaintiff reported to Defendant's management that MORFA had failed his background check and likely was ineligible for hire, despite MORFA's best attempts to discourage Plaintiff's reports.

79. Furthermore, Plaintiff reported to Defendant's Assistant Vice President Jackie B (last name unknown) that MORFA was discriminating against her based on her age.

80. Plaintiff participated in a protected activity as defined by the ADEA when she complained of MORFA's age discrimination to Defendant's Assistant Vice President Jackie B (last name unknown).

81. At all times relevant, the unlawful discrimination by Defendants employees against Plaintiff in the terms and conditions of her employment because she opposed a practice made unlawful by the ADEA which would not have occurred but for that opposition.

82. At all material times, the employer exhibiting discriminatory conduct against Plaintiff possessed the authority to affect the terms, conditions and privileges of Plaintiff's employment with the Defendant.

83. Defendant intentionally retaliated against Plaintiff by harassing her and discharging her for performing and reporting MORFA's background check by Defendant, as well as complaining of MORFA's age discrimination, made unlawful under the ADEA.

84. At all times relevant, the unlawful discrimination by Defendant's employees against Plaintiff in the terms and conditions of her employment because she reported MORFA's

11

background deficiencies and age discrimination, which would not have occurred but for her reporting such findings.

85. At all material times, the employer exhibiting discriminatory and harassing conduct against Plaintiff possessed the authority to affect the terms, conditions, and privileges of Plaintiff's employment with the Defendant.

86. Following Plaintiff's reports concerning MORFA's background check and age discrimination to Defendant, the hostility and discrimination increased dramatically.

87. After expressing her findings regarding MORFA's background check and reporting MORGA's age discrimination, Defendant retaliated against Plaintiff by, among other things, wrongfully and unlawfully discharging Plaintiff's employment.

88. The discriminatory actions of Defendant against Plaintiff, as described and set forth above, constitute an adverse employment action for purposes of ADEA. In subjecting Plaintiff to adverse employment action on the basis of her age, Defendant intentionally discriminated against Plaintiff with respect to the compensation, terms, conditions, or privileges of her employment.

89. As a result of Defendant's violations of the ADEA, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, mental pain and suffering; humiliation; emotional distress; diminishment of career opportunities; harm to business reputation; loss of self-esteem; disruption to her family life; and other harm, pain and suffering, both tangible and intangible.

90. Conduct of Defendant and/or its agents deprived Plaintiff of her statutory rights guaranteed under federal law.

91. Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

92. Plaintiff CARRERO has been damaged by the illegal conduct of Defendant.

## DEMAND FOR JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, including but not limited to all emotional distress and economic damages, punitive damages, liquidated damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated:  Miami, Florida
        June 21, 2021

Respectfully submitted,

DEREK SMITH LAW GROUP, PLLC
*Attorneys for Plaintiff*

Lauren Tobin, Esq.
Fla. Bar No. 1024850
Lauren@dereksmithlaw.com
701 Brickell Avenue, Suite 1310
Miami, FL 33131
Tel: (305) 946-1884
Fax: (305) 503-6741